Eric S. Vail (SBN 160333)
E-mail:  evail@bwslaw.com
Lee Burdick (SBN 157423)
E-mail:  lburdick@bwslaw.com
Stephen A. McEwen (SBN 186512)
E-mail:  smcewen@bwslaw.com
Karin A. Schambeck (SBN 244046)
E-mail:  kschambeck@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1770 Iowa Avenue, Suite 240
Riverside, CA 92507-2479
Tel: 951.788.0100    Fax:  951.788.5785

Attorneys for Plaintiff,
CITY OF CATHEDRAL CITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CITY OF CATHEDRAL CITY, a California municipal corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FANTASY BALLOON FLIGHTS, a sole proprietorship; STEVE WILKINSON, an individual; CINDY WILKINSON, an individual; JUSTIN WILKINSON, an individual; AND DOES 1-5,<br><br>　　　　　Defendants. | Case No.<br><br>**CITY OF CATHEDRAL CITY'S COMPLAINT FOR DAMAGES, TREBLE DAMAGES, DECLARATORY RELIEF, EQUITABLE ACCOUNTING, DISGORGEMENT AND INJUNCTION:**<br><br>1)　**TRADEMARK INFRINGEMENT [15 U.S.C. § 1125(a)(1) (Lanham Act § 43(a)];**<br>2)　**TRADEMARK DILUTION [15 U.S.C. § 1125(c) (Lanham Act § 43(a)];**<br>3)　**UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200);**<br>4)　**UNJUST ENRICHMENT;**<br>5)　**CONVERSION;**<br>6)　**INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>7)　**NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>8)　**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (SPONSORS);**<br>9)　**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (SPONSORS);**<br>10)　**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (BALLOON OPERATORS); AND**<br>11)　**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (BALLOON OPERATORS)** |

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4

1

CITY OF CATHEDRAL CITY'S
COMPLAINT

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff City of Cathedral City ("City"), by and through undersigned counsel, as for its Complaint against Fantasy Balloon Flights ("FBF"), a family-owned, California sole proprietorship, Steve Wilkinson ("S. Wilkinson"), a co-owner of FBF, Cindy Wilkinson ("C. Wilkinson"), a co-owner of FBF, and Justin Wilkinson ("J. Wilkinson"), a co-owner of FBF, and DOES 1-5, inclusive (collectively "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) by virtue of 15 U.S.C. §1125, *et seq.*, in that the case arises out of § 43(a) of the Lanham Act for trademark jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1367(a) and 1338(a) and (b).

2.     Venue is proper, *inter alia*, under 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

3.     Personal jurisdiction exists over Defendants because, on information and belief, Defendants conduct business in California and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over them does not offend traditional notions of fair play and substantial justice.

## THE PARTIES

4.     Plaintiff the CITY OF CATHEDRAL CITY ("Plaintiff") is now, and at the time of the filing of this Complaint and at all intervening times, a California municipal corporation and a charter city operating under principals of home rule. Plaintiff's principal offices are located at 68700 Avenida Lalo Guerrero, Cathedral City, California 92234.

5.      Plaintiff is informed and believes that Defendant FANTASY BALLOON FLIGHTS ("FBF") is now, and was at the time of the filing of the Complaint and at all intervening times, a sole proprietorship conducting its principal business operations at 74181 Parosella Street, Palm Desert, California 92260.

6.      Plaintiff is informed and believes that Defendant STEVE WILKINSON ("S. Wilkinson") is now, and was at the time of the filing of the Complaint and at all intervening times, a co-owner of FBF and conducts FBF's principal business operations from his residence at 74181 Parosella Street, Palm Desert, California 92260.

7.      Plaintiff is informed and believes that Defendant CINDY WILKINSON ("C. Wilkinson") is now, and was at the time of the filing of the Complaint and at all intervening times, a co-owner of FBF and conducts FBF's principal business operations from her residence at 74181 Parosella Street, Palm Desert, California 92260.

8.      Plaintiff is informed and believes that Defendant JUSTIN WILKINSON ("J. Wilkinson") is now, and was at the time of the filing of the Complaint and at all intervening times, a co-owner of FBF and conducts FBF's principal business operations at 74181 Parosella Street, Palm Desert, California 92260.

9.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein designated by fictitious names Does 1-5, inclusive, are unknown to Plaintiff. Plaintiff, therefore, sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

10.     Plaintiff further alleges that Does 1-5, inclusive, sued herein by fictitious names are jointly, severally and concurrently liable and responsible with the named Defendants upon the causes of action set forth herein.

11.     Plaintiff is informed and believes and thereon alleges that at all times

mentioned herein Defendants FBF, S. Wilkinson, C. Wilkinson, J. Wilkinson and Does 1-5, inclusive, and each of them (collectively "Defendants"), were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## INJURY TO PLAINTIFF

12.     In or about September 2014, a resident contacted Plaintiff's Communications and Events Manager, Chris Parman ("Mr. Parman"), to suggest that Plaintiff should add a tethered hot air balloon to an existing street fair event that Plaintiff produced regularly. That resident suggested that Mr. Parman contact Defendants FBF, S. Wilkinson and C. Wilkinson about providing a single hot air balloon for the street fair.

13.     Mr. Parman met with the Defendants on or about October 2014 to discuss FBF's hot air ballon business, their experience in the Coachella Valley, and the idea of FBF providing one hot air balloon for the street fair. During that conversation, Mr. Parman raised the question of whether a hot air balloon festival event, in addition to or in lieu of the street fair, was feasible.

14.     After meeting with Defendants, Mr. Parman began vetting the concept of a new Plaintiff-produced, hot air balloon festival event with Plaintiff's City Manager, Charlie McClendon ("Mr. McClendon"), and with certain members of Plaintiff's then City Council. On or about October 1, 2014, the City Council authorized City staff to produce an inaugural hot air balloon festival to be held in early 2015 and approved a budget of approximately $26,000 to fund the event. On or about November 1, 2014, Plaintiff entered into a verbal agreement with Defendants to secure their services to operate their own hot air balloon at the festival event and to recruit other balloon operators to attend ("2014 Agreement"). Plaintiff paid FBF $5,000 for their services for that aspect of the event.

15.     On or about January 8, 2015, Mr. Parman confirmed that Plaintiff's

inaugural hot air balloon festival ("Festival") would be held on February 13, 2015, which was President's Day weekend, and would be called the "Cathedral City Hot Air Balloon Festival." Shortly after deciding the name of the event, Mr. Parman began working with another of Plaintiff's employees, Engineering Technician Kevin Lockwood ("Mr. Lockwood"), to convert the name into the wordmark "Cathedral City Balloon Festival" and to develop the wordmark into a unique design logo that included elements specific to the trademark including, but not limited to, drawings of the black-and-white Cathedral City Bell Tower with the words "Cathedral City" on it, two abstract renderings of palm trees, a multi-colored hot air balloon, and a background mountain scape ("2015 Mark"). In addition to those standard graphic elements, Plaintiff included the logos of each Festival sponsor into the design. A true and correct copy of the 2015 Mark is attached to this Complaint as **Exhibit A**. Plaintiff did not register either its wordmark or its 2015 design mark with the U.S. Patent and Trademark Office ("USPTO") and instead relied on common law trademark protections under federal and state law and the limitations of Defendants' contractual use license.

16.     In or about December 2014, Mr. Parman solicited and secured the first Festival sponsor, KMIR, the local NBC affiliate. KMIR provided commercials and public service announcements regarding the event. Mr. Parman was also responsible for all other aspects of the first Festival, including scheduling street vendors, food trucks, alcohol vendors, security personnel, and road closures. He also coordinated with the Cathedral City Police and Fire Departments to ensure all aspects of public safety during the event.

17.     Plaintiff placed its 2015 Mark into use on or about January 9, 2015, on its newly developed, official website www.discovercathedralcity.com and on Plaintiff's Instagram account, both of which were used to advertise the Festival and other public events. Members of the public can go to Plaintiff's website or to its "Discover Cathedral City" Instagram account to see the latest information about

Plaintiff's events and important public service announcements. At or about the same time, Plaintiff made its wordmark and design mark logo available to Defendants based on Plaintiff's oral license to use the 2015 Mark for Defendants' provision of services under the 2014 Agreement.

18.     For the inaugural Festival on February 13 and 14, 2015, (the "2015 Festival"), Defendants were responsible for recruiting balloon pilots and managing the balloons' schedules, which involved coordinating with the Federal Aviation Administration and Palm Springs International Airport as services provided to Plaintiff pursuant to their 2014 Agreement. As part of their service responsibilities in managing the balloon operations, Defendants organized a Festival feature called a "balloon glow" – an evening event during which hot air balloons are inflated and lit up to create a glowing effect. Based on information and belief, it was estimated that approximately 4,000 people attended the balloon glow, making the Festival Plaintiff's most popular public event in recent history.

19.     The second Festival took place on or about February 13-15, 2016 ("February 2016 Festival"). Like the first Festival, Mr. Parman was responsible for organizing all aspects of the event except for the third-party, hot air balloon entrants, which were again handled by Defendants. Also like the inaugural Festival, Plaintiff hired Defendants to manage that distinct function of the Festival pursuant to a verbal agreement ("2016 Agreement"). As before, Plaintiff was responsible for soliciting and securing sponsors for the Festival, including the lead, presenting sponsor for the 2016 Festival, the Westin Mission Hills Golf Resort & Spa ("Westin").

20.     For the February 2016 Festival, Plaintiff developed an updated version of the 2015 Mark to advertise the Festival. The wordmark "Cathedral City Balloon Festival" remained the same as it was incorporated into the design logo, which included the same graphic elements as the 2015 Mark (*i.e.*, the wordmark, the black-and-white drawings of the Cathedral City Bell Tower with the words "Cathedral City" on it, two abstract renderings of palm trees, a multi-colored hot air balloon,

and a background mountain scape). As the Westin was the only official sponsor of the February 2016 Festival, Plaintiff developed only one version of the design mark that incorporated the Westin logo ("February 2016 Mark"). A true and correct copy of the February 2016 Mark is attached as **Exhibit B**.

21.     Plaintiff's first use of the February 2016 Mark was its incorporation into all event advertising materials beginning on or about September 2015 – including Defendants' authorized use of the February 2016 Mark based on Plaintiff's verbal license – and was posted on the "Discover Cathedral City" website and the Cathedral City Facebook page. Plaintiff did not register either its wordmark or its February 2016 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the February 2016 Mark and the limitations of Defendants' contractual use license.

22.     The February 2016 Festival was a success with attendance increasing significantly from the first Festival. The event was more robust with tethered balloon rides on Saturday and Sunday mornings and a balloon glow on Saturday night in Downtown Cathedral City and at the Westin Hotel in Rancho Mirage. In addition, there was an art show, food and alcohol vendors, restaurant row, Kid Zone, automobile displays, supporting vendors, and live music. Although Plaintiff and Defendants divided responsibilities for managing the additional Festival events, Defendants did so pursuant to the 2016 Agreement, for which Plaintiff paid FBF $20,000.

23.     Following the February 2016 Festival, Plaintiff determined, based on certain logistical issues, that it would be better to hold the Festival the weekend before Thanksgiving. To transition smoothly to this new event date, and based on the extraordinary public popularity of the 2015 and February 2016 Festivals, Plaintiff decided to organize the next Festival for November 2016.

24.     The third Festival took place on the weekend of November 18-20, 2016, and coincided with the 35th anniversary of Plaintiff's incorporation

1    ("November 2016 Festival"). For the November 2016 Festival, Plaintiff developed

2    an updated design mark to reflect the new Festival date and incorporated the same

3    graphic elements from the 2015 Mark and the February 2016 Marks (*i.e.*, the

4    wordmark, the black-and-white drawings of the Cathedral City Bell Tower with the

5    words "Cathedral City" on them, two abstract renderings of palm trees, a multi-

6    colored hot air balloon, and a background mountain scape). In addition, the

7    November 2016 design mark changed the colors of the balloon, added writing on the

8    balloon vertically over the top of three color blocks acknowledging the City's 35th

9    Anniversary and, in a few versions, included the silhouette of two musicians, one

10   playing a trumpet and the other a saxophone. The design marks were modified over

11   time to add sponsor logos as they signed on to support the event financially,

12   resulting in at least five versions of the design mark for the November 2016 Festival

13   ("November 2016 Marks"). True and correct copies of the November 2016 Marks

14   are attached as **Exhibit C**.

15       25.    Plaintiff's first use of the November 2016 Marks was their

16   incorporation into all the event advertising materials beginning in or about May

17   2016 – including those Defendants used based on Plaintiff's oral license – and were

18   posted on the "Discover Cathedral City" website and the Cathedral City Facebook

19   page. Plaintiff did not register either its wordmark or its November 2016 Marks with

20   the USPTO and instead relied on common law trademark protections under federal

21   and state law as applied to Plaintiff's first use of the November 2016 Marks .

22       26.    For the November 2016 Festival, Defendants continued to coordinate

23   all events and logistics related to the hot air balloons, including recruiting pilots,

24   organizing a hot air balloon race, balloon launches, and evening balloon glows.

25   Plaintiff continued to coordinate and manage all other aspects of the Festival.

26       27.    Following the November 2016 Festival, Plaintiff determined that it was

27   not feasible for Mr. Parman to continue serving as the Festival coordinator and

28   producer while also coordinating other community events for Plaintiff and carrying

out his ongoing day-to-day responsibilities as Plaintiff's Communications and Events Manager. As a result, Plaintiff decided to enter into an expanded, written agreement with Defendants who would serve as the event production company for the November 2017 and November 2018 Festivals.

28.   Subsequently, Plaintiff and Defendants consummated a written contract titled "Event Consultant/Coordination Services Agreement," executed and dated June 14, 2017 ("2017 Contract"). Under the 2017 Contract, which covered both the 2017 and 2018 Festivals, Defendants provided expanded event production services in exchange for payment from the City in the amount of $100,000 for each of the 2017 and 2018 events.

29.   The 2017 Contract interchangeably referred to Defendants as the "Event Production Company," "event planning representative(s)," "Producer" and "Contractor." Notably, the 2017 Contract: (1) acknowledged Plaintiff's wordmark "Cathedral City Hot Air Balloon Festival" as the name of the Festivals; (2) stated that "Cathedral City retains the rights to the name 'Cathedral City Hot Air Balloon Festival' and Producer will be granted use license for all related events"; (3) obligated "Producer to inform the City Events Manager of any known infringement"; and (4) noted that "Cathedral City is responsible for enforcement and licensing the name."

30.   In preparation for the November 2017 festival, which was Plaintiff's fourth hot air balloon event ("2017 Festival"), Plaintiff developed an updated design mark that incorporated the same graphic elements as the prior marks (*i.e.*, the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City" on it, two abstract renderings of palm trees, a multi-colored hot air balloon, and a background mountain scape). In addition, Plaintiff changed the 2017 design mark to restore color to two of the color blocks on the balloon and reduced the writing to one block showing the Westin sponsorship logo. One notable change to both the 2017 wordmark and design mark was the addition of the words "Hot Air"

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4

9

CITY OF CATHEDRAL CITY'S
COMPLAINT

in front of "Balloon," so that the trademarked name of the event became "Cathedral City Hot Air Balloon Festival" ("2017 Mark"). A true and correct copy of the 2017 Mark is attached as **Exhibit D**.

31.    Plaintiff's first use of the 2017 Mark was its incorporation into all event advertising materials – including those distributed by Defendants – and it was posted on the Discover Cathedral City website and the Cathedral City Facebook page beginning in or about May 2017. Plaintiff did not register either its wordmark or its 2017 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2017 Mark and the limitations of Defendants' contractual use license.

32.    The fifth Festival was produced on the weekend of November 16-18, 2018 ("2018 Festival"). For the 2018 Festival, Plaintiff developed an updated design mark that incorporated the same graphic elements and the modified wordmark from the 2017 Festival (*i.e.*, the name "Cathedral City Hot Air Balloon Festival," the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City" on it, an abstract rendering of two palm trees, a multi-colored hot air balloon that continued to represent the Westin logo on the same color block of the balloon, and a background mountain scape). The 2018 design mark was modified to include: (1) a logo from *Palm Springs Life*, an online lifestyle magazine, designating the Festival as the "Best of the Best Festivals; (2) a red banner in the upper right corner noting that the upcoming event was to be the "Fifth Annual" Festival; and (3) a graphic at the bottom advertising a new Festival feature – a "Food Truck Mash-Up" (the "2018 Mark"). A true and correct copy of the 2018 Mark is attached as **Exhibit E**.

33.    Plaintiff's first use of the 2018 Mark was its incorporation into all event advertising materials beginning in or about May 2018 – including those distributed by Defendants – and those that were posted on the "Discover Cathedral City" website and on the Cathedral City Facebook page. Plaintiff did not register either its

wordmark or its 2018 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2018 Mark and the limitations of Defendants' contractual use license.

34.    The estimated attendance for the 2018 Festival was more than 10,000 people. Following the 2018 Festival, on or about February 6, 2019, Plaintiff decided to renew its contract with Defendants and to continue to have Defendants serve as the event production company for its Festivals. To that end, the parties entered a new contract for the 2019 and 2020 festivals ("2019 Contract"). The 2019 Contract was entitled "Event Consultant/Coordination Services Agreement" and was substantially identical to the 2017 Contract. Pursuant to the 2019 Contract, Plaintiff paid FBF approximately $108,000 for the "2019 Festival."

35.    The next event was held on or about November 22-24, 2019, and Plaintiff once again updated its design mark, though it continued to incorporate the same wordmark and graphic elements as the prior trademarks (*i.e.*, the name "Cathedral City Hot Air Balloon Festival," the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City" on it, the same multi-colored hot air balloon as for the 2017 and 2018 Marks reflecting the Westin logo on the central color block, and a background mountain scape). The design mark was modified to: (1) remove the abstract rendering of the two palm trees; (2) add a red, upper-left corner banner highlighting that the event was Plaintiff's "6th Annual" Festival; and (3) include a balanced the design with an equally sized graphic to feature a "Food Truck Fiesta" as one of the Festival events ("2019 Mark"). A true and correct copy of the 2019 Mark is attached as **Exhibit F**.

36.    Plaintiff's first use of the 2019 Mark was its incorporation into all event advertising materials beginning in or about May 2019 – including those distributed by Defendants – and was posted on the "Discover Cathedral City" website and the Cathedral City Facebook page. Plaintiff did not register either its wordmark or its 2019 Mark with the USPTO and instead relied on common law trademark

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4                    11                    CITY OF CATHEDRAL CITY'S
COMPLAINT

protections under federal and state law as applied to Plaintiff's first use of the 2019 Mark and the limitations of Defendants' contractual use license.

37.     The 6th annual Festival expanded the events from previous years with balloon rides across the Coachella Valley, balloon glows on Friday and Saturday nights, a "Food Truck Fiesta" featuring food trucks from throughout Southern California, and live music entertainment. An estimated 12,000 to 15,000 people attended over the three days of the 2019 Festival, making it the largest crowd for the event up to that time. Most of the attendees arrived from outside of Cathedral City and the Coachella Valley.

38.     The next Festival was scheduled to take place on November 20-22, 2020 ("2020 Festival"). Plaintiff began developing an updated design mark for the 2020 Festival that initially mirrored the 2019 Mark except that the red upper-left corner banner was changed to reflect that the 2020 Festival was to be Plaintiff's "7th Annual" Festival ("2020 Mark"). A true and correct copy of the 2020 Mark is attached as **Exhibit G**. However, Plaintiff did not place the 2020 Mark into commerce as the COVID-19 pandemic forced Plaintiff to shut-down the 2020 Festival before it could be advertised. As such, Plaintiff did not register its 2020 Mark with the USPTO or rely on common law trademark protections under federal and state law. Defendants, however, continued to be limited in their use of the 2020 Mark by their contractual use license. The 2020 Mark reflects Plaintiff's continuous use of its wordmark and design marks that continues throughout the relevant time period here up to and including the present.

39.     In early 2021, Plaintiff decided to update the agreement with Defendants whereby they would continue to provide production services for the November 2021 and November 2022 Festivals (the "2021 Contract"). The 2021 Contract dated March 10, 2021, referred to Defendants as the "Service Provider." Under the heading "Service Provider Responsibilities," the 2021 Contract stated, "The City is retaining Service Provider to produce, organize, manage, and run the

Event in 2021 and 2022." Exhibit B to the 2021 Contract memorialized the parties' ongoing agreement and understanding that "[Plaintiff] retains the right to the name 'Cathedral City Hot Air Balloon Festival' and Service Provider will be granted a use license for all related events. As before, Service Provider was obligated "to inform the City Events Manager of any known infringement." Under the 2021 Contract, Plaintiff was required to pay FBF $110,000 for the November "2021 Festival" and $115,000 for the November "2022 Festival."

40.     Once again, Plaintiff developed an updated design mark for the 2021 Festival that incorporated most of the same wordmark and graphic elements as the prior trademarks (*i.e.*, the name "Cathedral City Hot Air Balloon Festival," the drawing of the Cathedral City Bell Tower with the words "Cathedral City" on it, and a background mountain scape). The design mark for the 2021 Festival was modified to include: (1) a logo for a new presenting sponsor, Agua Caliente Casinos ("ACC"), in the upper left corner; (2) the relocation of the red banner out of the corner and the balloon itself, reflecting the upcoming event as the "7th Annual"; and (3) the graphic design of the balloon changed from color blocks to red and white vertical stripes with a tan colored basket ("2021 Mark"). A true and correct copy of the 2021 Mark is attached as **Exhibit H**.

41.     The 2021 Mark was placed in first use in or about May 2021 when it was incorporated into all event advertising materials – including those distributed by Defendants – and was posted on the Discover Cathedral City website and on the Cathedral City Facebook page. Plaintiff did not register either its wordmark or its 2021 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2021 Mark and the limitations of Defendants' contractual use license.

42.     Although Plaintiff and FBF were operating under the 2021 Contract for the 2022 Festival, the parties decided to enter into an additional two-year contract for the 2023 and 2024 Festivals, entitled "Cathedral City Hot Air Balloon Festival

and Food Truck Fiesta Event Services Agreement," dated April 27, 2022 (the "2022 Contract"). Again, the 2022 Contract referred to FBF as the "Service Provider" that was obligated to "to produce, organize, manage, and run the Event in 2023 and 2024." The 2022 Contract provided further that, "[a]s consideration for Service Provider's of this Agreement to City's reasonable satisfaction," Plaintiff agreed to pay FBF an amount not to exceed $120,750 for the 2023 Festival and $126,750 for the 2024 Festival. It also stated:

> City retains the rights to the name "Cathedral City Hot Air Balloon Festival" and Service Provider will be granted use license for all related events. Service Provider is to inform the City Events Manager of any known infringement. City is responsible for enforcement and licensing the name . . . .

43.    In or about May 2022, Mr. Parman left Plaintiff's employment and, in or about August 2022, Plaintiff hired Ryan Hunt (Mr. Hunt") as its new Communications and Events Manager. When Mr. Hunt joined Plaintiff as its Communications and Events Manager, planning was well underway for the 8th Annual Cathedral City Hot Air Balloon Festival, which was scheduled for November 18-20, 2022 ("2022 Festival").

44.    Shortly after starting his employment with Plaintiff, Mr. Hunt observed that Defendants were advertising the Festivals and were soliciting pilots, volunteers, and sponsors on the website, www.hotairballoonfest.com, which Defendants controlled. Defendants also posted about the Festival on their Facebook page named "Cathedral City Hot Air Balloon Festival" and their Instagram account with the handle "@cathedral_city_balloonfest." The advertisements on Defendants' website and social media accounts were in addition to the Festival advertising and promotion Plaintiff placed on its website (www.discovercathedralcity.com) and its Facebook and Instagram accounts.

45.    Plaintiff developed one design mark for the 2022 Festival that mirrored

most of the important elements of its 2021 Mark by incorporating: (1) the wordmark, "Cathedral City Hot Air Balloon Festival"; (2) the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City on it; (3) a red-and-white-striped hot air balloon with the tan basket; (4) the red banner draped across the balloon identifying it as the "8th Annual" Festival; (5) the ACC logo in the upper left corner; and (6) a background mountain scape. In updating the design mark for the 2022 Festival, Plaintiff moved its regular design mark to occupy the left half of the design, allowed the border and the right side of design mark to remain black, and added the silhouette of three realistic palm trees in a tan color ("2022 Mark"). A true and correct copy of the 2022 Mark is attached as **Exhibit I**.

46.     Plaintiff put its 2022 Mark into first use in or about May 2022 when it was incorporated into all of the advertising and marketing materials for the 2022 Festival. Plaintiff did not register either its wordmark or its 2022 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2022 Mark and the limitations of Defendants' contractual use license.

47.     An estimated 20,000 to 30,000 people attended the 2022 Festival over the course of the three days, making it the most well attended among all of Plaintiff's community events. Notably, the 2022 Festival attracted balloon pilots from five different countries: England, Canada, the Netherlands, the Czech Republic, and Thailand. As a result, Plaintiff decided to modify the name of and the wordmark for future Festivals as the "Cathedral City International Hot Air Balloon Festival," by adding the word "International" before the words "Hot Air Balloon Festival."

48.     Plaintiff worked with Defendants on the production of the 2023 "Cathedral City International Hot Air Balloon Festival and Food Truck Fiesta" ("2023 Festival"), which occurred between November 17 and 19, 2023, and had similar attendance figures as the 2022 Festival.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

15

CITY OF CATHEDRAL CITY'S
COMPLAINT

49.    Plaintiff developed one design mark for the 2023 Festival that was simpler in design than the 2021 and 2022 Marks. The 2023 graphic design incorporated the new wordmark "Cathedral City International Hot Air Balloon Festival" and used many of the same graphic elements as the prior trademarks (*i.e.*, the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City" on it, a red-and-white-striped hot air balloon with a tan basket, a background mountain scape, and ACC's logo in the upper left corner ("2023 Mark"). A true and correct copy of the 2023 Mark is attached as **Exhibit J**.

50.    Plaintiff's first use of the 2023 Mark was in or about May 2023 with its incorporation into all of the advertising and marketing materials for the 2023 Festival. Plaintiff did not register either its wordmark or its 2023 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2023 Mark and the limitations of Defendants' contractual use license.

51.    The 10th annual Festival took place November 22-24, 2024 ("2024 Festival"), and featured LeAnn Rimes as the headlining musical performer. The 2024 Festival was the most attended Festival in the event's history with approximately 35,000 people attending over the course of three days.

52.    Plaintiff, per its regular practice, updated its design mark for the 2024 Festival that incorporated the traditional wordmark "Cathedral City International Hot Air Balloon Festival" and used many of the same graphic elements as the prior trademarks (*i.e.*, the black-and-white drawing of the Cathedral City Bell Tower with the words "Cathedral City" written on it; a smaller red-and-white, vertically striped hot air balloon with a tan basket; and a background mountain scape). The 2024 Mark also included a laurel-wreath design around a red-and-yellow ombre circle bordering the design mark with the word "10th" in a large metallic-looking font on the black mountain scape and the word "Anniversary" across a blue banner at the bottom the design mark ("2024 Mark"). A true and correct copy of the 2024 Mark is

attached as **Exhibit K**.

53.    Plaintiff first used the 2024 Mark when it was incorporated into all of the advertising and marketing materials for the 2024 Festival beginning on or about January 28, 2024. Because the 2024 Festival was the 10th Anniversary event, Plaintiff began using the 2024 Mark earlier than most of the prior years' Marks. Plaintiff did not register either its wordmark or its 2024 Mark with the USPTO and instead relied on common law trademark protections under federal and state law as applied to Plaintiff's first use of the 2024 Marks and the limitations of Defendants' contractual use license.

54.    Despite the strong attendance figures at the 2024 Festival, there were numerous problems with Defendants' performance under the 2022 Contract, including, but not limited to, Defendants' marketing, staffing, and financial management of the 2024 Festival. Despite Plaintiff's best efforts to meet with Defendants in December of 2024 shortly after the 2024 Festival, to discuss and resolve the performance problems, and to attempt to enter into a new contract for future Festivals, Plaintiff and Defendants were unable to resolve the disputed issues. Plaintiff, therefore, decided to issue a Request for Proposals ("RFP") for special event production services for the 2025, 2026, and 2027 Festivals.

55.    Plaintiff issued the RFP on January 24, 2025, with a response deadline of March 7, 2025. Plaintiff received four proposals including one from FBF. Following an evaluation process, the City Council selected SoundSkilz, Inc. on April 9, 2025, as the vendor for the future Festivals. On April 23, 2025, the City Council approved a three-year "Cathedral City International Hot Air Balloon Festival Event Services Agreement" with SoundSkilz for the upcoming events.

56.    Despite the City's decision to award a new contract to SoundSkilz following the open RFP process, Defendants began to advertise and post on their www.hotairballoonfest.com website, their CathedralCityHotAirBalloonFestival/ Facebook account, and on their @cathedral_city_balloonfest Instagram account,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4                          17                    CITY OF CATHEDRAL CITY'S
                                                                              COMPLAINT

which they previously used to advertise Plaintiff's Festivals, information about volunteering for, participating in, and sponsoring the 2025 Cathedral City International Hot Air Balloon Festival. On Defendants' hotairballonfest.com website, the website's home page displays the words "11th Annual International Hot Air Balloon Festival," which is Plaintiff's wordmark in the ordinary course of Plaintiff's Festival production. Moreover, the design mark Defendants are using for the 2025 event provides the dates of November 21-23, 2025 for the 2025 Festival, which is the weekend that Plaintiff has stated its intent to hold the next Festival as set out in the RFP to which Defendants responded.

57.     Beginning on or after Defendants were made aware they had lost Plaintiff's RFP process and the contract for Festival production services, Defendants posted and continue to post on each page of their website www.hotairballonfest.com a modified version of Plaintiff's 2024 Mark. Defendants' modification of Plaintiff's 2024 Mark continues to include many longstanding elements of Plaintiff's trademarks over time, including: (1) Plaintiff's wordmark "Cathedral City International Hot Air Balloon Festival"; (2) the black and white Cathedral City Bell Tower with the words "Cathedral City" written on it; (3) the red-and-white vertically striped hot air balloon (though they have changed the basket to red instead of tan); and (4) the green laurel wreath around a golden circle encasing Plaintiff's trademark. True and correct copies of Defendants' infringing use of Plaintiff's marks are attached as **Exhibit L**. Defendants' website includes numerous official pictures of past Cathedral City Hot Air Balloon Festivals that Defendants acquired as a direct result of their work for Plaintiff under the prior agreements and contracts. The contact phone number on the website belongs to Defendant S. Wilkinson. Defendants' website invites interested parties to "Follow us on Facebook for updated information."

58.     On or about April 25, 2025, Plaintiff's City Attorney sent a cease-and-desist letter to Defendants demanding that they stop the unauthorized use and

dissemination of Plaintiff's international balloon festival logo and refrain from advertising Plaintiff's Festival. The letter demanded that Defendants confirm in writing their compliance with Plaintiff's demand no later than May 6, 2025.

59.    In response, Defendants acknowledged that they received the cease-and-desist letter, but did not comply with Plaintiff's demand. Though having been provided notice they no longer have Plaintiff's license to continue using Plaintiff's Marks, or promoting and advertising Plaintiff's Festival as if it is their own, Defendants' continued using the Marks with only minor modification. The only noticeable changes were to Defendants' Facebook Page "Cathedral City Hot Air Balloon Festival," which the title itself infringes on Plaintiff's wordmarks.

60.    On or about May 16, 2025, Defendants posted to their Facebook page a single composite graphic with photos Defendants secured as a result of their past contract work for Plaintiff and a revised graphic design of a blank-white hot air balloon with the words "11th Annual Hot Air Balloon Festival November 21-23, 2025" written in a cartoonish font. Other than that one change, Defendants did nothing to distinguish their promotion of an "11th Annual Hot Air Balloon Festival" to be held on the same dates as Plaintiff's 2025 Festival. In every other photo on Defendants' Facebook page, they continue to use Plaintiff's Marks (*i.e.*, the black-and-white Cathedral City  Bell Tower with the words "Cathedral City" written on it, the red-and-white striped balloon with the tan basket, and Plaintiff's wordmarks, *etc.*) True and correct copies of Defendants' postings on the Cathedral City Hot Air Balloon Festival Facebook page are attached as **Exhibit M**.

61.    As recently as Friday, June 13, 2025, Defendants' posted on their @cathedral_city_balloonfest Instagram account and their Cathedral City Hot Air Balloon Festival Facebook account a picture of a hot air balloon displaying Plaintiff's 2023 Mark with the wordmark "Cathedral City International Hot Air Balloon Festival" and the red-and-white, vertically striped hot air balloon with the tan basket. In the post, Defendants advertisements state, "Follow the Cathedral City

International Hot Air Balloon Festivals [sic] name sake [sic] Hot Air Balloon and World-renowned Pilot Steve Wilkinson on their summer tour!" The advertisements then state that the Defendants intend to display Plaintiff's "name sake balloon" (*i.e.*, distinctive trademark) at the following, upcoming public events: June 20-22, 2025 – Temecula Balloon and Wine Festival; July 18-20, 2025 – Sonoma County Hot Air Balloon Classic; July 25-27, 2025 – Balloons Over Bend, Oregon; September 5-7, 2025 – Great Reno Balloon Race; October 4-12, 2025 – Albuquerque International Balloon Fiesta; and November 21-23, 2025 – "Back home at the 11th Annual Cathedral City International Balloon Festival." A true and correct copy of Defendants' June 13, 2025, Instagram posting is attached as **Exhibit N**.

62. Since selecting SoundSkilz as its Festival producer going forward, Plaintiff has developed the first version of its wordmark and design mark for the 2025 Festival. Like the design marks before it, it includes: (1) the common graphic elements of the black-and-white Cathedral City Bell Tower with the words "Cathedral City" on it; (2) the red-and-white, vertically striped hot air balloon with the tan basket; (3) a red banner across the front of the balloon; and (4) the black mountain scape behind the balloon. Plaintiff's wordmark for this version of the Festival logo is "Cathedral City Hot Air Balloon Festival." It also advertise the dates of the 2025 Festival as "November 21-23, 2025" and directs the recipient to "Save the Date" (2025 Mark"). A true and correct copy of the 2025 Mark is attached as **Exhibit O**.

63. As noted above, Defendants continue to promote the "11th Annual Cathedral City International Hot Air Balloon Festival" on their website and social media. They are using these platforms to solicit sponsors, vendors, pilots, and volunteers for the event without distinguishing themselves as lacking the authority to use Plaintiff's Marks or to host a hot air balloon event on the dates of the 2025 Festival, because Defendants have not secured any permits or approvals from Plaintiff to host the event as an independent, third-party vendor, thus placing the

public's health and safety at risk given the easily combustible balloon fuel.

64. Based on information and belief, Defendants' active solicitation of hot air balloon pilots and event sponsors is making and will continue to make it difficult for SoundSkilz, Plaintiff's newly approved event production company, to perform its legal duties under its Festival contract with Plaintiff. Plaintiff is informed and believes that Defendants have already received payments from balloon pilots to participate in the 2025 Festival. Finally, based on information and belief, Defendants' usurpation of Plaintiff's established rights to the Marks is currently causing confusion in the marketplace, among the public, among the sponsors and among the balloon pilot entrants as to the source of the 2025 Festival's goods and services. Defendants' actions creating such confusion are and will continue to damage Plaintiff's reputation for producing a high-quality event that is attended by interested parties from around the world and Plaintiff's goodwill, which damage is likely irreparable unless enjoined immediately.

## FIRST CAUSE OF ACTION

### (Violation of Title 15 U.S.C. § 1125(a)(1), Lanham Act § 43(a) - Trademark)

65. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-64 as though fully set forth herein.

66. Defendants are actually aware that Plaintiff is the holder of the unregistered trademarks in the form of the wordmarks "Cathedral City Balloon Festival," "Cathedral City Hot Air Balloon Festival," "Cathedral City Hot Air Balloon Festival and Food Truck Fiesta," "Cathedral City International Hot Air Balloon Festival," the "10th Annual Cathedral City International Hot Air Balloon Festival" and all derivatives thereof, which are attached hereto as Exhibits A-K and O (collectively, the "Marks").

67. Plaintiff's Marks are distinctive through their commercial use, or in the alternative, have acquired secondary meaning associated with Plaintiff as the single commercial sources in the minds of consumers. As a result of the substantial,

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4

21

CITY OF CATHEDRAL CITY'S
COMPLAINT

inherent and acquired distinctiveness in Plaintiff's Marks, extensive use worldwide, and the wide advertising and publicity of the Mark, Plaintiff's Marks have become strong and are widely identified and respected with Plaintiff as the single commercial source in the minds of consumers

68.     Defendants failed to and did not obtain Plaintiff's consent or authorization as the owner of these Marks to use them to commercially advertise, solicit sales, or otherwise represent Defendants as the source of goods and services associated with the Marks in the stream of commerce.

69.     Defendants intentionally and knowingly used in commerce the reproduction, counterfeit, copy, and/or colorable imitation of Plaintiff's Marks in connection with the sale, advertisement, solicitation, and offering for sale of Plaintiff's goods and services by offering, advertising, promoting, and selling Defendants' versions of the "Cathedral City 11th Annual International Hot Air Balloon Festival."

70.     Defendants reproduced, counterfeited, copied, and colorably imitated Plaintiff's Marks and applied such reproduction, counterfeit, copy, or colorable imitation to advertisements, solicitations, applications and other electronic forms, Internet websites, and social media intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods and services. Defendants thereupon offered, advertised, promoted, solicited, sold, and distributed Plaintiff's upcoming 2025 Festival event through their website "hotairballoonfest.com" and their social media sites, including but not limited to their Facebook page "Cathedral City Hot Air Balloon Festival," and their Instagram account "@cathedral_city_balloonfest."

71.     Defendants' egregious and intentional use and sale of fake and counterfeit goods and services bearing Plaintiff's Marks constitutes a false designation of the origin of the goods and services and is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud the consumer who

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

22

CITY OF CATHEDRAL CITY'S
COMPLAINT

believes that the goods and services are officially authorized, authentic and offered by Plaintiff.

72.     Defendants' continued and knowing use of Plaintiff's Marks including Plaintiff's corporate name "Cathedral City," in conjunction with a hot air balloon festival without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's unregistered, common law Marks in violation of 15 U.S.C. Section 1125(a)(1) (Section 43(a) of the Lanham Act).

## SECOND CAUSE OF ACTION

### (Violation of Title 15 U.S.C. § 1125(c) – Trademark Dilution)

73.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-72 as though fully set forth herein.

74.     Plaintiff's Marks are distinctive through their commercial use, or in the alternative, have acquired secondary meaning associated with Plaintiff as the single commercial sources in the minds of consumers. As a result of the substantial, inherent and acquired distinctiveness in Plaintiff's Marks, extensive use worldwide, and the wide advertising and publicity of the Mark, Plaintiff's Marks have become strong and are widely identified and respected with Plaintiff as the single commercial source in the minds of consumers.

75.     Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Mark became famous, and Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiff's reputation and to dilute Plaintiff's Marks. Defendants submitted a competitive proposal as part of Plaintiff's RFP process to secure the rights to produce, manage and operate Plaintiff's upcoming 2025 Festival and to be granted licensing rights to the Marks for that purpose. Despite having lost in the RFP process, Defendants continued to usurp, use, counterfeit and create colorably similar marks with respect to Plaintiff's upcoming 2025 Festival, proving Defendants' conduct is willful, wanton and egregious.

76.     In addition, Defendants' slight revision and modification of Plaintiff's

Marks following the issuance of Plaintiff's April 25, 2025 cease-and-desist letter and then continued, knowing, deliberate and willful use of Plaintiff's Marks with the intent to trade on Plaintiff's reputation and to dilute Plaintiff's Marks is further evidence that Defendants' conduct is willful, wanton and egregious.

77.     The actions of Defendants complained of herein are likely to injure the business reputation of Plaintiff and its Marks.

78.     Defendants' intentional sale, solicitation, advertising and securing applications from balloon pilot entrants and financial contributions and commitments from event sponsors based on Defendants' creation and use of fake, copied, manipulated and counterfeit Marks bearing Plaintiff's Marks unfairly competes with Plaintiff and is likely to cause confusion and mistake or to deceive, mislead, betray, and defraud consumers into believing that Defendants' substandard goods and services – as evidenced in part by Defendants' substandard performance under the 2022 Contract in managing, operating and promoting the 2024 Festival, refusing to correct those substandard performance problems, thus compelling Plaintiff to initiate and execute a competitive bidding process in lieu of hiring Defendants to produce, manage and operate the 2025 Festival instead – are Plaintiff's genuine and authorized goods and services.

79.     Defendants' unauthorized and counterfeit use of Plaintiff's famous Marks has diluted and will continue to dilute and tarnish Plaintiff's name and Marks, and is likely to detract from the distinctiveness of Plaintiff's Marks.

80.     Defendants' conduct is intended to trade on Plaintiff's reputation and goodwill and the quality and high standards of Plaintiff's goods and services. Defendants' failure to meet Plaintiff's strict regulations and expectations of quality, responsive and timely performance of the services and production of the related Festival goods and events will mar the perception among consumers regarding Plaintiff's products and events, will tarnish and dilute the strength and value of Plaintiff's Marks, and will saturate the hot air balloon event marketplace with

substandard goods and services.

81. Defendants' egregious and intentional use, advertising and promotion of a fake, unpermitted hot air balloon festival bearing colorably similar marketing designations to Plaintiff's Marks is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud the consumer who will believe that the Festival goods and services are authentic and manufactured by Plaintiff.

82. Defendants' continuing and knowing use of "11th Annual Cathedral City International Hot Air Balloon Festival" or variations thereon, along with many of the same graphic elements consistently used in Plaintiff's Marks, constitutes intentional infringement of Plaintiff's common law Marks in violation of 15 U.S.C. § 1125(c) and California common law, as well as dilution and injury to business reputation in violation of Cal. Bus. & Prof Code §14200, *et seq.*

83. Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused, which will continue to be caused by Defendants unlawful acts, unless they are enjoined by this Court.

## THIRD CAUSE OF ACTION

### (Unfair Competition – Cal. Bus. & Prof. Code § 17200)

84. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-83 as though fully set forth herein.

85. Defendants have committed all of the aforesaid acts of infringement deliberately, willfully, maliciously and oppressively, without regard to Plaintiff's legal, contractual, and exclusive proprietary rights.

86. Defendants' acts and practices as detailed above constitute acts of unlawful, unfair or fraudulent business acts and practices within the meaning of California Business & Professions Code §17200.

87. Defendants have engaged in transactions that are in violation of numerous provisions of California law. Strict liability may be applied even if Defendants' acts have violated only one of the provisions set forth herein.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

25

CITY OF CATHEDRAL CITY'S
COMPLAINT

88.     Pursuant to California Business & Professions Code §17203, Plaintiff seeks an order from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and/or ordering that Defendants perform their obligations under the law and to cancel any illegal obligations related to the acts complained of herein.

89.     Plaintiff additionally requests an order from this Court requiring that Defendants disgorge profits and all moneys already received or committed to be received that are actually received in the future related to the upcoming 2025 Festival and return or pay to Plaintiff all of Defendants' ill-gotten gains obtained from the illegal transactions, and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

90.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-89 as though fully set forth herein.

91.     By virtue of the egregious and illegal acts of Defendants as described above, Defendants have been unjustly enriched in an amount to be proven at trial.

92.     Defendants' retention of monies gained through its deceptive business practices, infringements, acts of counterfeit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

### FOURTH CAUSE OF ACTION
### (Conversion)

93.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-92 as though fully set forth herein.

94.     Defendants legally acquired the licensed use of Plaintiff's Marks for multiple Festivals over the period of almost 10 years pursuant to agreements and contracts with Plaintiff. However, following (1) Plaintiff's significant efforts to

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4

26

CITY OF CATHEDRAL CITY'S
COMPLAINT

work with Defendants to correct Defendants' multiple performance issues related to the 2024 Festival, (2) the issuance of a competitive bidding RFP for Festival event production, marketing and operational services for the upcoming 2025 Festival, which process defendants lost, and (3) Plaintiff's issuance of a cease-and-desist letter notifying Defendants of Plaintiff's superior legal rights to use the Marks and demanding that Defendants stop all use of Plaintiff's Marks, Defendants did knowingly and intentionally proceed to substantially interfere with Plaintiff's rights to own, possess, control, and use its Marks to promote, advertise and solicit vendors, sponsors, hot air balloon pilot entrants and volunteers the upcoming 2025 Festival.

95.    Further, following the events described above, Defendants did knowingly and intentionally take possession of Plaintiff's Marks for the purpose of depriving Plaintiff of the value of its property and preventing Plaintiff from using the Marks productively to promote, advertise, solicit and sell goods and services associated with Plaintiff's upcoming 2025 Festival.

96.    Defendants, by using Plaintiff's Marks and associating them with defective and/or substandard quality of goods and services, have destroyed the value of the Marks.

97.    Despite Plaintiff's demand that Defendants cease and desist from using Plaintiff's Marks to promote, advertise, sell and solicit patronage associated with the 2025 Festival, Defendants refused to stop doing so and continue now to control and use similar graphic designs, logos and wordmarks to Plaintiff's Marks in an effort to deceive the public and the hot air balloon festival marketplace into believing Defendants' advertised event is in fact Plaintiff's 2025 Festival.

98.    As described herein, Plaintiff did not consent to Defendants' use of Plaintiff's Marks and did in fact award the license to use Plaintiff's Marks to another production company (SoundSkilz, Inc.) through a competitive RFP process that Defendants lost to promote, sell, solicit, produce and operate Plaintiff's 2025 Festival.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

27

CITY OF CATHEDRAL CITY'S
COMPLAINT

99.    As a result of Defendants' actions (1) substantially interfering with Plaintiff's property rights, (2) preventing Plaintiff from using its own Marks for the promotion of its own 2025 Festival due to the confusion Defendants have created in the marketplace as to the source of the Festival goods and services, (3) destroying the value of Plaintiff's marks through dilution and misuse, and (4) refusing to stop using Plaintiff's Marks after being so directed, Plaintiff and the public have been harmed by Defendants' actions as described herein.

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Economic Advantage)

100.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-99 as though fully set forth herein.

101.    Plaintiff implemented a competitive bidding process to award a production services contract for the promotion, management and operation of its 2025, 2026 and 2027 Festivals. Defendants participated in that process by submitting a bid proposal in an effort to contract with Plaintiff for the services. Following completion of the competitive process whereby a different vendor – SoundSkilz, Inc. – was selected and awarded the production services contract, Defendants knew that they were not selected to serve as Plaintiff's vendor and that Plaintiff had entered into an economic relationship with SoundSkilz that would probably have resulted in an economic benefit to Plaintiff and, indirectly to the Cathedral City taxpayers and community.

102.    By Defendants knowingly and intentionally proceeding to usurp, use, destroy, dilute and mislead through the use of Plaintiff's Marks and other actions of Defendants for the advertisement, sale, solicitation and promotion of the 2025 Festival, functions for which SoundSkilz was contracted to perform, Defendants knowingly and intentionally disrupted the economic relationship between Plaintiff and SoundSkilz.

103.    Moreover, Defendants' actions have in fact disrupted the economic

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4                     28                     CITY OF CATHEDRAL CITY'S
COMPLAINT

relationship between Plaintiff and SoundSkilz as, based on information and belief, Defendants have solicited and received sponsorship commitments and balloon pilot applications and entry fees for the upcoming 2025 Festival, for which SoundSkilz is contractually responsible under its contract with Plaintiff. Further, based on Defendants' direct promotion and solicitation to sponsors and balloon pilot entrants, there is confusion in the marketplace as to whether SoundSkilz is the authentic, authorized producer and manager of Plaintiff's 2025 Festival or whether Defendants are, which confusion is interfering in SoundSkilz's ability to perform its contractual duties to Plaintiff.

104.   As a direct result of Defendants' actions, Plaintiff and indirectly the Cathedral City taxpayers and community have been harmed by Defendants impeding and disrupting SoundSkilz's ability to maximize the economic benefits resulting from its performance under its contract with Plaintiff. Given Defendants' dilution and injury to Plaintiff's Marks, that interference and harm to Plaintiff's economic relationship with SoundSkilz may extend to the 2026 and 2027 Festival events as well.

## SIXTH CAUSE OF ACTION

### (Negligent Interference with Economic Advantage)

105.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-104 as though fully set forth herein.

106.   Plaintiff implemented a competitive bidding process to award a production services contract for the promotion, management and operation of its 2025, 2026 and 2027 Festivals. Defendants participated in that process by submitting a bid proposal in an effort to contract with Plaintiff for the services. Following completion of the competitive process whereby a different vendor – SoundSkilz, Inc. – was selected and awarded the production services contract, Defendants knew that they were not selected to serve as Plaintiff's vendor and that Plaintiff had entered into an economic relationship with SoundSkilz that would

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

4923-4178-0555 v4                29                CITY OF CATHEDRAL CITY'S
COMPLAINT

1    probably have resulted in an economic benefit to Plaintiff and, indirectly to the
2    Cathedral City taxpayers and community.

3        107.    By proceeding to usurp, use, destroy, dilute and mislead through the
4    use of Plaintiff's Marks and other actions of Defendants for the advertisement, sale,
5    solicitation and promotion of the 2025 Festival, functions for which SoundSkilz was
6    contracted to perform, Defendants knew or should have known that their actions
7    would disrupt the economic relationship between Plaintiff and SoundSkilz.

8        108.    Moreover, Defendants' negligent actions have in fact disrupted the
9    economic relationship between Plaintiff and SoundSkilz as, based on information
10   and belief, Defendants have solicited and received sponsorship commitments and
11   balloon pilot applications and entry fees for the upcoming 2025 Festival, for which
12   SoundSkilz is contractually responsible under its contract with Plaintiff. Further,
13   based on Defendants' direct promotion and solicitation to sponsors and balloon pilot
14   entrants, there is confusion in the marketplace as to whether SoundSkilz is the
15   authentic, authorized producer and manager of Plaintiff's 2025 Festival or whether
16   Defendants are, which confusion is interfering in SoundSkilz's ability to perform its
17   contractual duties to Plaintiff.

18       109.    As a direct result of Defendants' negligent actions, Plaintiff and
19   indirectly the Cathedral City taxpayers and community have been harmed by
20   Defendants impeding and disrupting SoundSkilz's ability to maximize the economic
21   benefits resulting from its performance under its contract with Plaintiff. Given
22   Defendants' dilution and injury to Plaintiff's Marks, that interference and harm to
23   Plaintiff's economic relationship with SoundSkilz may extend to the 2026 and 2027
24   Festival events as well.

25                    **SEVENTH CAUSE OF ACTION**

26   **(Intentional Interference with Prospective Economic Advantage – Sponsors)**

27       110.    Plaintiff repeats and re-alleges each and every allegation set forth in
28   paragraphs 1-109 as though fully set forth herein.

111.    As part of each and every Festival, Plaintiff – either directly or indirectly through its hired management and production company – promotes its Festivals to potential sponsors to secure their financial support for the event though monetary and in-kind contributions (*e.g*., offering up their venues on which to host some Festival events, etc.). Following its competitive bidding process and before Plaintiff and its selected vendor – SoundSkilz, Inc. – could begin promoting Plaintiff's upcoming 2025 Festival to potential sponsors, Defendants were already soliciting sponsors for financial and in-kind commitments for the 2025 Festival without disclosing that Defendants were not in fact the owners or Plaintiff's authorized agents for purposes of promoting the Festival and soliciting the financial commitments.

112.    By Defendants knowingly and intentionally proceeding to usurp, use, destroy, dilute and mislead through the use of Plaintiff's Marks and other actions of Defendants for the advertisement, sale, solicitation and promotion of the 2025 Festival to potential sponsors, functions for which SoundSkilz was contracted to perform, Defendants knowingly and intentionally disrupted the prospective economic relationship between Plaintiff and those potential sponsors, some of which had financially supported the Festivals in the past and represented a strong, prospective likelihood of entering into an economic relationship with Plaintiff in the future.

113.    Moreover, Defendants' knowing and intentional actions have disrupted the prospective economic relationships between Plaintiff and potential sponsors as, based on information and belief, Defendants have solicited sponsorship commitments for the upcoming 2025 Festival without disclosing that Defendants are not the owners or Plaintiff's authorized agents for purposes of soliciting those sponsorship commitments. As such, Plaintiff is informed and believes that potential sponsors are hesitating and reconsidering whether to sponsor the 2025 Festival given their confusion about with whom they are expected to contract for the

financial commitment.

114.   As a direct result of Defendants' knowing and intentional actions, Plaintiff, the Cathedral City taxpayers and the community have been harmed by Defendants promoting and soliciting sponsorship commitments without disclosing that Defendants are not the Festival owners or Plaintiff's authorized agents for the purpose of securing those sponsorship commitments. Given Defendants' actions, past and prospective sponsors will be reticent, and may in fact  decline, to enter into an economic relationship with Plaintiff related to the 2025 Festival and may choose not to consider sponsoring future Festival events as well.

## EIGHTH CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Advantage – Sponsors)

115.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-114 as though fully set forth herein.

116.   As part of each and every Festival, Plaintiff either directly or indirectly through its hired management and production company promotes its Festivals to potential sponsors to secure their financial support for the event through monetary and in-kind contributions (*e.g.*, offering up their venues on which to host some Festival events, etc.). Following its competitive bidding process and before Plaintiff and its selected vendor – SoundSkilz, Inc. – could begin promoting Plaintiff's upcoming 2025 Festival to potential sponsors, Defendants were already soliciting sponsors for financial and in-kind commitments for the 2025 Festival without disclosing that Defendants were not in fact the owners or Plaintiff's authorized agents for purposes of promoting the Festival and soliciting the financial commitments.

117.   By Defendants proceeding to usurp, use, destroy, dilute and mislead through the use of Plaintiff's Marks and other actions of Defendants for the advertisement, sale, solicitation and promotion of the 2025 Festival to potential

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

32

CITY OF CATHEDRAL CITY'S
COMPLAINT

sponsors, functions for which SoundSkilz was contracted to perform, Defendants knew or should have known their actions would disrupt the prospective economic relationship between Plaintiff and those potential sponsors, some of which had financially supported the Festivals in the past and which represent a strong, prospective likelihood of entering into an economic relationship with Plaintiff in the future.

118.   Moreover, Defendants' negligent actions have disrupted the prospective economic relationships between Plaintiff and potential sponsors as, based on information and belief, Defendants have solicited sponsorship commitments for the upcoming 2025 Festival without disclosing that Defendants are not the owners or Plaintiff's authorized agents for purposes of soliciting those sponsorship commitments. As such, Plaintiff is informed and believes that potential sponsors are hesitating and reconsidering whether to sponsor the 2025 Festival at all given their confusion as to with whom they are expected to contract for the financial commitment.

119.   As a direct result of Defendants' negligent actions, Plaintiff and indirectly the Cathedral City taxpayers and community have been harmed by Defendants promoting and soliciting sponsorship commitments without disclosing that Defendants are not the Festival owners or Plaintiff's authorized agents for the purpose of securing those sponsorship commitments. Given Defendants' actions, past and prospective sponsors will be reticent, and may in fact  decline, to enter into an economic relationship with Plaintiff related to the 2025 Festival and may choose not to consider sponsoring future Festival events as well.

### NINTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage – Balloon Operators)**

120.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-119 as though fully set forth herein.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

33

CITY OF CATHEDRAL CITY'S
COMPLAINT

121.   The most essential element for the success of any hot air balloon festival is the participation of hot air balloon owners, operators and pilots ("Balloon Operators"). As part of each and every Festival, Plaintiff indirectly through its hired management and production company promotes its Festivals to potential Balloon Operators to secure their participation in the event. The upcoming 2025 Festival is expected to be the largest, most well attended Festival yet, with more Balloon Operators committing to attend than at any prior Festival. To participate, Balloon Operators must submit an application, disclose important information about their company and its operations, especially related to past operations and the public safety, and pay an entry fee.

122.   Following its competitive bidding process and before Plaintiff and its selected vendor – SoundSkilz, Inc. – could begin promoting Plaintiff's upcoming 2025 Festival to potential Balloon Operators, Defendants were already soliciting Balloon Operators' participation in the 2025 Festival without disclosing that Defendants were not in fact the owners or Plaintiff's authorized agents for purposes of promoting the Festival and soliciting their participation.

123.   By Defendants knowingly and intentionally proceeding to usurp, use, destroy, dilute and mislead through the use of Plaintiff's Marks and other actions of Defendants for the advertisement, sale, solicitation and promotion of the 2025 Festival to potential Balloon Operators, functions for which SoundSkilz was contracted to perform, Defendants knowingly and intentionally disrupted the prospective economic relationship between Plaintiff and those potential Balloon Operators, some of which had financially committed to and participated in past Festivals and who represented a strong, prospective likelihood of entering into an economic relationship with Plaintiff in the future.

124.   Moreover, Defendants' knowing and intentional actions have disrupted the prospective economic relationships between Plaintiff and potential Balloon Operators as, based on information and belief, Defendants have solicited and have

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY
4923-4178-0555 v4
34
CITY OF CATHEDRAL CITY'S
COMPLAINT

received entry fees from Balloon Operators for the upcoming 2025 Festival without disclosing that Defendants are not the owners or Plaintiff's authorized agents for purposes of soliciting those entry commitments. As such, Plaintiff is informed and believes that potential Balloon Operators are – or will be soon – hesitating and reconsidering whether to enter the 2025 Festival at all given their confusion as to with whom they are expected to contract for the participation and whether the entry fees some of them have already paid will be honored to secure their participation in the event.

125. As a direct result of Defendants' knowing and intentional actions, Plaintiff and indirectly the Cathedral City taxpayers and community have been harmed by Defendants promoting and soliciting Balloon Operator commitments without disclosing that Defendants are not the Festival owners or Plaintiff's authorized agents for the purpose of securing their participation. Given Defendants' actions, past and prospective sponsors will be reticent, and may in fact decline, to enter into an economic relationship with Plaintiff related to participation in the 2025 Festival and potential future Festival events as well. Defendants' actions with respect to soliciting and accepting payment of the entry fees from Balloon Operators may have the greatest and most long-lasting harm to Plaintiff given the essential participation of Balloon Operators to the success of any hot air balloon festival.

## ELEVENTH CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Advantage – Balloon Operators)

126. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-125 as though fully set forth herein.

127. The most essential element for the success of any hot air balloon festival is the participation of hot air balloon owners, operators and pilots ("Balloon Operators"). As part of each and every Festival, Plaintiff indirectly through its hired management and production company promotes its Festivals to potential Balloon

Operators to secure their participation in the event. The upcoming 2025 Festival is expected to be the largest, most well attended Festival yet, with more Balloon Operators committing to attend than at any prior Festival. To participate, Balloon Operators must submit an application, disclose important information about their company and its operations, especially related to past operations and the public safety, and pay an entry fee.

128.    Following its competitive bidding process and before Plaintiff and its selected vendor – SoundSkilz, Inc. – could begin promoting Plaintiff's upcoming 2025 Festival to potential Balloon Operators, Defendants were already soliciting Balloon Operators' participation in the 2025 Festival without disclosing that Defendants were not in fact the owners or Plaintiff's authorized agents for purposes of promoting the Festival and soliciting their participation.

129.    By Defendants negligent actions advertising, selling, soliciting and promoting the 2025 Festival to potential Balloon Operators, functions for which SoundSkilz was contracted to perform, Defendants knew or should have known they would disrupt the prospective economic relationship between Plaintiff and those potential Balloon Operators, some of which had financially committed to and participated in past Festivals and who represented a strong, prospective likelihood of entering into an economic relationship with Plaintiff in the future.

130.    Moreover, Defendants' negligent actions have disrupted the prospective economic relationships between Plaintiff and potential Balloon Operators as, based on information and belief, Defendants have solicited and have received entry fees from Balloon Operators for the upcoming 2025 Festival without disclosing that Defendants are not the owners or Plaintiff's authorized agents for purposes of soliciting those entry commitments. As such, Plaintiff is informed and believes that potential Balloon Operators are – or will be soon – hesitating and reconsidering whether to enter the 2025 Festival at all given their confusion as to with whom they are expected to contract for the participation and whether the entry

1  fees some of them have already paid will be honored to secure their participation in

2  the event.

3      131.  As a direct result of Defendants' negligent actions, Plaintiff and

4  indirectly the Cathedral City taxpayers and community have been harmed by

5  Defendants promoting and soliciting Balloon Operator commitments without

6  disclosing that Defendants are not the Festival owners or Plaintiff's authorized

7  agents for the purpose of securing their participation. Given Defendants' actions,

8  past, current and prospective Balloon Operators will be reticent, and may in fact

9  decline, to enter into an economic relationship with Plaintiff related to participation

10 in the 2025 Festival and potential future Festival events as well. Defendants'

11 negligent actions with respect to soliciting and accepting payment of the entry fees

12 from Balloon Operators may have the greatest and most long-lasting harm to

13 Plaintiff given the essential participation of Balloon Operators to the success of any

14 hot air balloon festival.

15                    **PRAYER FOR RELIEF**

16     WHEREFORE, Plaintiff prays for relief against Defendants as follows:

17     1.    For damages in an amount to be proven at trial for trademark

18 infringement 15 U.S.C. § 1125(a) (Lanham Act §43(a));

19     2.    For damages in an amount to be proven at trial for false designation of

20 origin under 15 U.S.C. §1125(a);

21     3.    For damages in an amount to be proven at trial for trademark dilution

22 under 15 U.S.C. §1125(c);

23     4.    For damages to be proven at trial for common law unfair competition;

24     5.    For damages in an amount to be proven at trial for unfair, fraudulent

25 and illegal business practices under Business and Professions Code §17200;

26     6.    For damages in an amount to be proven at trial for intentional and

27 negligent interference with economic advantage and prospective economic

28 advantage;

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4              37              CITY OF CATHEDRAL CITY'S
COMPLAINT

7.     For disgorgement of Defendants' profits and all payments received under 15 U.S.C. § 1117(a);

8.     For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein;

9.     For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including the amount of monies that should have been paid if Defendants' complied with their legal obligations, or as equity requires;

10.    For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

11.    For treble damages suffered by Plaintiff as a result of Defendants' willful and intentional infringements and acts of misappropriation and use of counterfeit marks under 15 U.S.C. §1117(b);

12.    For damages in an amount to be proven at trial for unjust enrichment;

13.    For Plaintiff's reasonable attorney's fees;

14.    For all costs of suit; and

15.    For such other and further relief as the Court may deem just and equitable.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4

38

CITY OF CATHEDRAL CITY'S
COMPLAINT

1  Dated:  June 16, 2025                        BURKE, WILLIAMS & SORENSEN, LLP

2

3

4                                              By:  _____/s/ Lee Burdick_____

5                                                   Eric S. Vail
                                                    Lee Burdick
6                                                   Stephen A. McEwen
                                                    Karin A. Schambeck
7                                                   Attorneys for Plaintiff,
                                                    CITY OF CATHEDRAL CITY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

City demands a trial by jury on all issues triable by a jury.

3

Dated:  June 16, 2025                              BURKE, WILLIAMS & SORENSEN, LLP

4

5

6                                          By: _____/s/ Lee Burdick_____
                                               Eric S. Vail
7                                              Lee Burdick
8                                              Stephen A. McEwen
                                               Karin A. Schambeck
9                                              Attorneys for Plaintiff,
10                                             CITY OF CATHEDRAL CITY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4923-4178-0555 v4                              40                    CITY OF CATHEDRAL CITY'S
                                                                    COMPLAINT

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C











# EXHIBIT D



# EXHIBIT E





# EXHIBIT F



# EXHIBIT G



# EXHIBIT H



# EXHIBIT I



# EXHIBIT J



# EXHIBIT K



# EXHIBIT L

**Home Page –** **www.hotairballoonfest.com**



**About Page:**



**Festival Info Page:**



FRIDAY, NOVEMBER 21st, 2025

Agua Caliente Resort Casino Spa
Rancho Mirage Hot Air Balloon Launch

32250 Bob Hope Dr, Rancho Mirage

6:00 am Coffee & Continental Breakfast items
available for purchase

7:00- 8:30 am Balloon Launch



COMING SOON



**Volunteers Page:**



Volunteer to be on a Balloon Crew

**Contact Page:**



# EXHIBIT M

**Facebook "Cathedral City Hot Air Balloon Festival" Page:**

May 16, 2025 Post:



**Defendants' Facebook Banner:**



**Posts Using Plaintiff's Trademarks:**







# EXHIBIT N

**cathedral_city_balloonfest June 13, 2025 Instagram Post:**



# EXHIBIT O

